OPINION
{¶ 1} Appellant, Roosevelt Perry, appeals from a final judgment of the Trumbull County Court of Common Pleas convicting him of three counts of robbery and one count of theft from an elderly person. For the reasons that follow, the judgment of the trial court is affirmed in part and reversed in part, and the matter is remanded for further proceedings consistent with this opinion.
 {¶ 2} The testimony at trial was that on the morning of June 10, 2001, at approximately 6:20 a.m., Jennifer Samble ("Samble") was working at the Save-a-Step convenience store in Hubbard Township, Ohio, when she noticed a tall, black male enter the store. After asking another person in the store for directions, the man began selecting items from the shelves and bringing them to the counter one item at a time. Because of the man's strange behavior, Samble pushed the store's panic button. Eventually, the man approached the counter a final time and told Samble "that this [was] a robbery." He then placed his hand in his pocket, warned Samble that he had a gun, and threatened to kill her if she did not give him the money.
 {¶ 3} Instead of complying with the man's request, Samble stepped away from the counter and announced to the other people in the store that the man was "trying to rob [her]!" The man backed away from Samble and grabbed a five-dollar bill from Debra Grilli ("Grilli"), who was in line to pay for a cup of coffee. When the man demanded more money from Grilli, she claimed that she did not have any more money with her. The man then turned to another customer, George Roth ("Roth"), spun him around, removed Roth's wallet from his back pocket, and exited the store. Once outside, the man entered a "white Honda Civic looking car" and drove out of the parking lot.
 {¶ 4} Hubbard Township police officers arrived at the store a short time later and interviewed the witnesses and collected evidence. From their investigation, they determined that appellant was a possible suspect. Accordingly, they showed a photo array, which included a picture of appellant and five other black males, to Samble, Grilli, and Roth, each of whom separately identified appellant as the perpetrator.
 {¶ 5} On September 19, 2001, the Trumbull County Grand Jury indicted appellant on the following charges: one count of robbery, in violation of R.C. 2911.02(A)(2) and (B); two counts of robbery, in violation of R.C. 2911.02(A)(3) and (B); and one count of theft from an elderly person, in violation of R.C. 2913.02(A)(1) and (B)(3). Appellant subsequently filed a motion to suppress, in which he asked the trial court to exclude any pretrial identifications of appellant, as well as any future in-court identifications. The trial court held a suppression hearing, and after considering the evidence, overruled appellant's motion.
 {¶ 6} The matter proceeded to jury trial beginning on February 5, 2002. At the conclusion of the trial, the jury considered the evidence and found appellant guilty of all four charges. The trial court accepted the jury's verdicts and then sentenced appellant to an eight-year prison term on count one, which was to be served consecutive to the concurrent five-year terms of incarceration imposed by the court for counts two and three. In addition, the trial court merged count four with count three for an aggregate sentence of thirteen years.
 {¶ 7} From this decision, appellant filed a timely notice of appeal with this court. He now submits the following assignments of error for our consideration:
 {¶ 8} "[1.] The trial court erred and abused its discretion by failing to grant appellant's motion to suppress.
 {¶ 9} "[2.] The appellant's conviction for theft of an elderly person is not supported by sufficient evidence.
 {¶ 10} "[3.] The appellant's convictions are against the manifest weight of the evidence.
 {¶ 11} "[4.] The trial court erred by imposing consecutive sentences upon appellant."
 {¶ 12} Under his first assignment of error, appellant argues that the trial court erred by denying his motion to suppress. Specifically, he maintains that the trial court should have suppressed both the pretrial and subsequent in-court identifications made by Samble, Grilli, and Roth because the photo array used by the police was overly suggestive.
 {¶ 13} At a hearing on a motion to suppress, the trial court functions as the trier of fact. Accordingly, the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses. State v. Mills (1992),62 Ohio St.3d 357, 366. On review, an appellate court must accept the trial court's findings of fact if those findings are supported by competent, credible evidence. State v. Retherford (1994),93 Ohio App.3d 586, 592. After accepting such factual findings as true, the reviewing court must then independently determine, as a matter of law, whether or not the applicable legal standard has been met. Id.
 {¶ 14} In Neil v. Biggers (1972), 409 U.S. 188, the United States Supreme Court held that in order to determine the admissibility of a pretrial identification of a suspect by a witness, a trial court must engage in a two-step analysis. First, the court must determine whether the identification procedure was unduly suggestive. If the procedure was overly suggestive, then the court must proceed to the second step in which it ascertains whether there was a substantial likelihood of misidentification. Biggers at 197-199. As a result, before identification testimony will be suppressed, the court must find that the procedure employed by the police was so impermissibly suggestive as to give rise to the substantial likelihood of misidentification.
 {¶ 15} The burden is on the defendant to prove that the procedure employed was unfairly suggestive and that the resulting identification was unreliable based on the totality of the circumstances standard adopted in Biggers. State v. Green (1996), 117 Ohio App.3d 644, 652-653;State v. McDade (Sept. 25, 1998), 11th Dist. No. 97-L-059, 1998 WL 682360, at 4. If the defendant fails to satisfy the first part of this burden, neither the trial court nor an appellate court need consider the totality of the circumstances. Green at 653; McDade at 4. However, if the defendant satisfies his initial burden of proof, the burden of persuasion falls upon the state to show that the evidence is valid. State v. Kuzma
(Dec. 3, 1993), 11th Dist. No. 93-P-0019, 1993 Ohio App. LEXIS 5768, at 5, quoting State v. Hensley (1992), 75 Ohio App.3d 822, 828-829.
 {¶ 16} Even if the identification procedure contains notable flaws, this alone does not necessarily preclude the admissibility of the subsequent in-court identification. State v. Moody (1978),55 Ohio St.2d 64, 67, citing State v. Barker (1978), 53 Ohio St.2d 135,142-143. In order to suppress identification testimony, there must be "`a very substantial likelihood of irreparable misidentification.'" State v.Jells (1990), 53 Ohio St.3d 22, 27, quoting Simmons v. United States
(1968), 390 U.S. 377, 384.
 {¶ 17} Moreover, an unnecessarily suggestive identification procedure does not run afoul of the Due Process Clause if the identification is otherwise imbued with sufficient indicia of reliability. The critical issue is whether the identification is reliable under the totality of the circumstances, notwithstanding the suggestiveness of the confrontation procedure. Biggers at 199 (observing that the central question is whether "the identification was reliable even though the confrontation procedure was suggestive"). Therefore, even if the procedure was suggestive, the challenged identification is still admissible so long as it is reliable. Moody at 67. See, also, Green at 652.
 {¶ 18} Here, appellant claims that the pretrial identification of him by Samble, Grilli, and Roth did not comport with due process requirements. In particular, he maintains that the photo array presented by the police to the three witnesses was unduly suggestive, which, in turn, created a substantial likelihood that he was misidentified as the robber.
 {¶ 19} Appellant contends that the photo array was unduly suggestive because he was the only light-complected black male included in the array. This is simply not true. Our review of the photo array shows that at least one of the other men actually had a similar, if not the same, skin tone as appellant. Nevertheless, even if appellant had the lightest complexion of the six men, the procedure still was not unduly suggestive because "`there was not such a significant difference in skin tones to make the distinction prejudicial.'" McDade at 6, quoting Statev. Cox (May 23, 1997), 11th Dist. No. 95-T-5279, 1997 Ohio App. LEXIS 2244, at 25. See, also, State v. Johnson (Sept. 24, 1999), 11th Dist. No. 97-T-0227, 1999 WL 778383, at 4. The six photographs in the array all depict similar black males roughly the same age with short hair, normal complexions, and facial hair.
 {¶ 20} Having carefully considered the record, we conclude that the photo array employed by the Hubbard Township Police Department was not unduly suggestive, and that the trial court did not err in overruling appellant's motion to suppress. Accordingly, because appellant has not satisfied the first prong under Biggers, there is no need for this court to analyze the totality of the circumstances to determine the reliability of the identification testimony. Nevertheless, we note that even if this court were inclined to accept appellant's position that the array was impermissibly suggestive, there is nothing to indicate that the pretrial and subsequent in-court identifications by Samble, Grilli, and Roth were unreliable in any way, let alone that they gave rise to a substantial likelihood of irreparable misidentification. Appellant's first assignment of error is not well taken.
 {¶ 21} In his second assignment of error, appellant argues that his conviction for theft from an elderly person is not supported by sufficient evidence as the state did not introduce any evidence of Roth's age. We agree.
 {¶ 22} When reviewing the sufficiency of the evidence to support a criminal conviction, a court must examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average trier of fact of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, citing Jackson v. Virginia (1979), 443 U.S. 307.
 {¶ 23} To convict appellant of theft from an elderly person, the state, in addition to establishing the elements found in R.C. 2913.02, was required to prove that the victim, Roth, was sixty-five years of age or older. R.C. 2913.01(CC). The state concedes that there is no evidence of Roth's age at the time of the theft. However, the state argues that there is other evidence in the record that would allow the jury to reasonably infer that Roth was older than sixty-five.
 {¶ 24} For example, the state contends that Roth suffered from poor eyesight and hearing, and that his speech "betrayeth his generation[.]" To further support its position, the state relies upon State v. Skaggs
(1994), 97 Ohio App.3d 15, in which this court held that although there was no evidence of the dates of birth of the minors involved, there was circumstantial evidence that they were under the age of eighteen because they had been transferred to a youth development center when remanded into custody.
 {¶ 25} The mere fact that a person has poor eyesight, has suffered hearing loss, and speaks in a manner unfamiliar to others is hardly circumstantial evidence that the person is sixty-five years of age or older. These traits are hardly unique to an elderly person. In fact, one can probably walk down any given street and encounter a person with at least one of these characteristics. As a result, we conclude that appellant's conviction for theft from an elderly person is not supported by sufficient evidence. Appellant's second assignment of error has merit.
 {¶ 26} In assignment of error three, appellant contends that his convictions are against the manifest weight of the evidence.
 {¶ 27} When reviewing a claim that a judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. Statev. Martin (1983), 20 Ohio App.3d 172, 175. See, also, State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52.
 {¶ 28} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion. Thompkins at 390 (Cook, J., concurring). The reviewing court must defer to the factual findings of the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph two of the syllabus.
 {¶ 29} When assessing witness credibility, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." State v. Awan (1986), 22 Ohio St.3d 120,123. "Indeed, the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it." Warren v. Simpson (Mar. 17, 2000), 11th Dist. No. 98-T-0183, 2000 WL 286594, at 3. Furthermore, if the evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict. Id.
 {¶ 30} In the case at bar, the jury was clearly in the best position to view the witnesses and determine their credibility. Obviously, the jury ultimately believed that Samble, Grilli, and Roth were more credible than the witnesses presented by appellant. And despite the fact that much of the weight of the testimony presented rested on the credibility of the witnesses, there is nothing to suggest that the victims' testimony was incredible or absurd. Accordingly, this court will not disturb those findings on appeal as the credibility of each witness was a critical issue for the trier of fact to determine. State v. Ready
(2001), 143 Ohio App.3d 748.
 {¶ 31} Moreover, the state introduced other evidence that supports the jury's verdict. Samble, Grilli, and Roth each identified appellant as the perpetrator. There was also evidence that witnesses observed appellant leaving the scene in a vehicle similar to the one owned by his girlfriend. And, although appellant had an alibi witness, his girlfriend, who testified that he was sleeping at the time the robbery took place, the jury was free to accept or disregard her testimony based on its assessment of her credibility. Appellant's third assignment of error is without merit.
 {¶ 32} Under his fourth and final assignment of error, appellant argues that the trial court erred when it sentenced him to serve consecutive sentences without making the required findings on the record.
 {¶ 33} Under R.C. 2953.08, our review of a felony sentence is de novo. State v. Raphael (Mar. 24, 2000), 11th Dist. No. 98-L-262, 2000 WL 306776, at 2. However, this court will not disturb appellant's sentence unless we find, by clear and convincing evidence, that the record does not support the sentence or that the sentence is otherwise contrary to law. State v. Thomas (July 16, 1999), 11th Dist. No. 98-L-074, 1999 WL 535272, at 4, quoting State v. Rose (Sept. 15, 1997), 12th Dist. No. CA96-11-106, 1997 Ohio App. LEXIS 4161, at 5. Clear and convincing evidence is that evidence which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Thomas at 4.
 {¶ 34} When imposing consecutive sentences, the trial court must first determine that consecutive sentences are "necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public[.]" R.C.2929.14(E)(4). Next, the trial court must find that one of the following factors listed in R.C. 2929.14(E)(4) is also present: (a) that the offender was awaiting trial or sentencing or was under community control sanctions; (b) that the harm caused by the offenses was so great that a single prison term would not adequately reflect the severity of the conduct; or (c) that the offender's prior criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime. State v. Norwood (June 8, 2001), 11th Dist. No. 2000-L-072, 2001 WL 635951, at 4.
 {¶ 35} The court must also follow the requirements set forth in R.C. 2929.19(B) when sentencing an offender to consecutive sentences under R.C. 2929.14. Specifically, R.C. 2929.19(B)(2)(c) requires that the trial court justify its imposition of consecutive sentences by making findings that gives the court's reasons for selecting that particular sentence.
 {¶ 36} In the past, this court has held that the findings mandated by R.C. 2929.14 "must appear somewhere on the record of sentence, either in the judgment or in the transcript of the sentencing hearing." (Emphasis added.) State v. Rone (Dec. 4, 1998), 11th Dist. No. 98-A-0001, 1998 Ohio App. Lexis 5813, at 6. See, also, State v. Hoskins
(Mar. 16, 2001), 11th Dist. No. 2000-A-0037, 2001 Ohio App. Lexis 1232. Recently, however, the Supreme Court of Ohio held that when ordering a defendant to serve consecutive sentences, the trial court must make its statutorily required findings at the sentencing hearing. State v. Comer,99 Ohio St.3d 463, 2003-Ohio-4165, paragraphs one and two of the syllabus.
 {¶ 37} Here, the trial court failed to make any findings under R.C. 2929.14(E)(4). Other than appellant's criminal history, nowhere in the record is there any indication as to why the trial court believed consecutive sentences were appropriate in this case. Furthermore, because the trial court did not explain why consecutive sentences were "necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public[,]" the court also failed to comply with R.C. 2929.19(B)(2)(c). Appellant's fourth assignment of error has merit.
 {¶ 38} Pursuant to the foregoing analysis, appellant's first and third assignments of error are not well-taken, while his second and fourth assignments of error have merit. Therefore, the judgment of the trial court is affirmed in part and reversed in part, appellant's sentence is vacated, and the matter is remanded for resentencing.
Donald R. Ford, P.J., and Diane V. Grendell, J., concur.